[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Petitioner, Amancio DePina ("hereinafter referred to as DePina, Petitioner or Defendant"), is before the Court on his Application for Post-Conviction Relief pursuant to G.L. 1956 § 10-9.1-1. DePina alleges that he did not knowingly, intelligently and voluntarily enter into a plea agreement on May 29, 1997. For reasons set forth below, the Court denies DePina's petition for post-conviction relief.
 FACTS
On February 8, 1997, Petitioner was arrested by the North Providence Police Department and charged with: 1) Assault on a uniformed police officer, 2) Felony Assault and 3) Resisting Arrest. It was not his first arrest nor was it his last. In fact at the time of the plea, DePina was on an eleven (11) month suspended sentence for two counts of simple assault (reduced from two counts of child molestation). On May 29, 1997, DePina entered a plea of nolo contendere to an amended charge of simple assault and resisting arrest with count 2 dismissed pursuant to Rule 48A of the Rhode Island Rules of Criminal Procedure. As a result of his plea negotiations, he received a one-year suspended sentence on the two counts to run concurrent with an agreement that he would not be presented as a violator of his previous sentence.
Six years later, on July 6, 2003, DePina was once again arrested and charged with simple assault domestic (61-2003-12163) and on April 14, 2004, entered a plea of nolo contendere and was placed on probation for a period of six months.
After this last arrest, DePina was detained by the Bureau of Immigration and Customs Enforcement (BICE) and deportation proceedings were begun. The basis of the deportation was the plea entered on May 29, 1997, which is the subject of the instant petition.
As grounds for the Motion, Petitioner claims:
 1. The plea was not a knowing, intelligent and voluntary waiver of his constitutional rights.
2. Ineffective assistance of counsel.
3. Plea should be vacated in the interest of justice.
An evidentiary hearing was held on June 3, June 9 and June 17, 2004 after several delays to secure the presence of DePina. However, because of the lack of cooperation on behalf of the Federal authorities, DePina was not transported from the Wyatt Detention Facility in Central Falls.
 DISCUSSION
I. Plea was not a voluntary waiver of rights due to the lack of aqualified interpreter.
Petitioner claims that he did not understand the rights he was waiving or the consequences of the plea because of his inability to understand English. In fact, at the time of the plea, DePina appeared in court with an unidentified person that his defense counsel identified as an interpreter. When the court inquired who the person was, defense counsel, John S. Coughlin (Coughlin), informed the court that the person was a friend of the defendant. Since it is not the policy of the court to allow people of questionable qualifications or people with relationships to the defendant to act as interpreters, the court offered Attorney Coughlin a continuance to secure an interpreter. This lead to the following exchange:
THE COURT: Why do you have two people?
MR. COUGHLIN: Interpreter, Your Honor.
THE COURT: Who is the interpreter?
MR. COUGHLIN: It's a friend.
 THE COURT: Your going to have to get somebody that is Court —
MR. COUGHLIN: Creole.
 THE COURT: It could be medieval Irish for all I care. You're going to have to get somebody other than a friend who can interpret.
MR. COUGHLIN: Fine
THE COURT: I can give you a continuance obviously —
 MR. COUGHLIN: I'll, I'll get somebody from the Institute. All right. These are felony charges. The Institute sent us people for the other trial; And they didn't speak the current language.
 MR. COUGHLIN: Do you have anyone that speaks Creole as opposed to Portuguese? Do you understand me?
THE DEFENDANT: Yes
MR. COUGHLIN: Do you want to try this Judge?
 THE COURT: All right. You've done this before, and he's never had any problem?
MR. COUGHLIN: No.
The prior case counsel referred to was P1-1996-1108 in which DePina was charged with two counts of child molestation which were later amended to two counts of simple assault. Mr. Coughlin represented DePina in that case as well and it appears from his remarks that that plea was also entered without a Creole interpreter. The sentence imposed in that case is of interest because it was an unusual 11 months suspended on each amended count rather than one year.
Next, the clerk addressed the defendant (See State's Exhibit #1 page 7):
THE CLERK: What is your name?
THE DEFENDANT: Amancio Depina
THE CLERK: Your date of birth?
THE DEFENDANT: January 17, 1996.
THE CLERK: And your address?
THE DEFENDANT: 126 Lonsdale Avenue, Pawtucket.
It does not appear from the record that DePina had any difficulty understanding and responding to the clerk in the English language.
Finally, the court addressed the defendant (See State's Exhibit #1):
 THE COURT: Mr. Depina, you stand before this court charged with one count of simple assault and one count of resisting arrest. On each of those counts you could be sentenced for up to one year in jail. Do you understand the charges that bring you here?
THE DEFENDANT: Yeah.
THE COURT: Do you understand the penalties?
THE DEFENDANT: Yes.
 THE COURT: Your lawyer has asked this court to allow you to enter a plea of nolo contendere to those charges. Is that what you wish to do here this morning?
THE DEFENDANT: Yeah.
THE COURT: Mr. Depina, how far did you go in school?
THE DEFENDANT: Five years.
THE COURT: Five years?
THE DEFENDNT: Fifth grade.
 THE COURT: The document I am showing you is a request to enter a plea of nolo contendere, did you sign that document?
THE DEFENDANT: Yeah.
THE COURT: Do you understand it?
THE DEFENDANT: I understand
 THE COURT: Now, do you understand that by entering a plea of nolo contendere to these misdemeanor charges you are giving up all the rights listed on this document. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Do you give them up voluntarily?
THE DEFENDANT: Yeah.
 THE COURT: Are you under the influence of any drugs or alcohol here this morning?
THE DEFENDANT: No.
 THE COURT: Do you suffer from any disease of the mind that would make it difficult for you to understand what was going on around you at this moment?
THE DEFENDANT: No.
The only time that defendant hesitated in answering was when he was asked if, prior to sentencing, he wished to address the court. At that point, Mr. Coughlin spoke with the defendant and DePina answers no. This hesitation is common because defendants often feel that they are expected to say something at this point. The record is clear that this face-to-face colloquy clearly demonstrated to the court that DePina understood the questions put to him and answered those questions knowingly and intelligently.
Any suggestion that Mr. Coughlin was attempting to rush the defendant into pleading is also contrary to the record. The court had already granted Attorney Coughlin five separate continuances to allow him to investigate various aspects of this case. On the day of the plea, Attorney Coughlin was offered a further continuance. He declined, not because he was in a hurry, but rather because he did not feel that one was necessary. Mr. Coughlin had represented the DePina family in a number of cases and, as mentioned, had represented Petitioner on his previous case in Superior Court. He was familiar with DePina and his language abilities and assured the court that DePina had pleaded before without an interpreter and without any difficulty.
Petitioner cites United States v. Carrion, 1188 F.2d 12 (1st Circuit 1973):
 "The trial court should make it unmistakably clear to a defendant who may have a language difficulty that he has a right to a . . . interpreter if the court determines that one is needed, and, whenever put on notice that there may be significant language difficulty, the court should make a determination of need."
That is exactly what was done in the instant case. The court questioned the defendant as to his knowledge and understanding of the plea and determined that no problem existed and that defendant understood what was being said to him. The question of language and understanding arose only after further arrests and the beginning of deportation proceedings.
At the hearing, Petitioner called his brother, Aguinaldo Pires (Pires), who related his brother's lack of formal education in the Portuguese educational system. Pires further stated that DePina was not fluent in English. However, under cross examination, Pires admitted that his contact with his brother was usually limited to family gatherings where only their native language was spoken. Pires admitted that he had never spoken English to DePina and really did not know how well DePina spoke English.
As has been noted, DePina was not available to testify at the hearing. Although the court offered to allow the taking of his testimony by deposition that opportunity was declined. Therefore, after reviewing the testimony, exhibits and record, this Court concludes that DePina did in fact understand what was being said to him, he responded to his attorney, the clerk, the prosecutor, as well as the court without hesitation. It appears that his claims regarding his language ability are in inverse proportion to the gathering storm of his deportation proceeding and are rejected by the Court. Petitioner maintains that at those proceedings he could communicate only through a Creole interpreter. It remains a mystery as to how he could answer every question put to him seven years earlier. The Court suggests that the solution to that mystery is that Petitioner is making one last desperate attempt to escape the consequences of his actions.
II. Ineffective Assistance of Counsel
 A. Defendant improperly informed of the immigration consequences of hisplea.
Petitioner claims that Attorney Coughlin improperly advised him of the possible immigration consequences of the plea. He claims that he was advised that the plea would have an impact on his immigration status. Yet, this assertion is not supported by the evidence. At a bench conference held prior to the plea, Attorney Coughlin clearly informs the prosecution and the court that he had requested a continuance in order to determine those immigration consequences. On the day of the plea, he stated that he was unable to determine what, if any, those consequences would be and, therefore, could not advise his client.
However, it is important to note that less than one year before Attorney Coughlin had represented DePina on child molestation charges. As noted earlier, those charges were amended to two charges of simple assault and defendant was sentenced to an eleven (11) month suspended sentence on each. Attorney Coughlin testified that the reason for the unusual sentence was to avoid any immigration problems for his client. It appears therefore that DePina was already on notice that criminal conduct could have serious adverse consequences for someone with his immigration status yet he still could not conform his behavior to the law and found himself back in court on new charges while still on a suspended sentence. It wasn't that DePina had never been advised of his dilemma, he simply choose to ignore it.
At the plea, the court failed to inform DePina of the possible immigration consequences. Although such warnings were in fact given by this court since 1994, they were not included when the charges were misdemeanors. However, our Supreme Court has held in State v. Figueroa,639 A.2d 495 (1994) and again in State v. Alejo, 655 A.2d 692 (1995) that only the direct consequences of a plea of nolo contendere or guilty are consequences that need to be addressed with the defendant upon acceptance of a plea. The court stated that "[t]he possibility of deportation is only a collateral consequence because the sanction is controlled by an agency which operates beyond the direct authority of the trial justice."Alejo, 655 A.2d at 692 (quoting Figueroa, 639 A.2d at 499). Further, G.L. 1956 § 12-12-22, provides that "failure to so inform the defendant (of the immigration consequences) shall not invalidate any action subsequently taken by the court."
Of course, in July 2000, the statute was changed but that obviously would have no bearing on a plea taken in 1997. Yet, it is important to note that holding attorneys to a standard of higher knowledge of immigration law seven years ago may itself be unfair. Although immigration law was being more strictly enforced then, its reverberations in state courts was relatively new. Petitions, such as being considered here, were relatively rare seven years ago. It is in more recent years that a cottage industry has been developed dealing with these issues. It must be remembered that DePina is taken into custody by immigration more than six years after his plea in this case and then only after a new arrest for domestic assault. To portray immigration consequences in 1997 as something foremost in the minds of attorneys and hold them to a 2004 standard is to ignore the realities.
The claim that Attorney Coughlin was ineffective as to the advisement of the immigration consequences is not supported by the record. Attorney Coughlin had advised DePina of such consequences regarding his earlier plea so his client was not hearing them for the first time in 2003. As to the plea which is the subject in the case at bar, he was unable to make any assurances regarding the impact on his client's immigration status. The claim of ineffective assistance of counsel as to this issue must fail.
B. Defendant improperly advised of the nature of the charge ofresisting arrest.
Petitioner claims that Attorney Coughlin failed to advise him regarding the charge of resisting arrest found in count three of the information. The record reflects the following (State's Exhibit #1 page 5):
THE COURT: This is going to be a misdemeanor?
 MR. PAGE: Yes, misdemeanor, please. Agreement of no violation.
MR. COUGHLIN: No.
MR. PAGE: I'm sorry.
 MR. COUGHLIN: Do you have the number of the violation case?
 MR. PAGE: Yes I do. Yeah. P1-96-1108. Okay. For the numbers, for the purpose of the numbers. I'll guess I'll amend it.
THE COURT: Do you have the numbers?
 MR. PAGE: Count I will be amended to simple assault, count 2 will be dismissed, and count 3 will remain as is, resisting arrest.
 MR. COUGHLIN: Do you want to do it now, your Honor? He has already signed the agreement.
 THE COURT: You're all set right now? You went over it with him?
 MR. COUGHLIN: I've gone over it with him. I just didn't mention resisting arrest.
Based on the above, Petitioner claims that he was not advised as to the charge in count 3 that is, resisting arrest. However, Petitioner misunderstands the nature of plea negotiations on the pre-arrangement calendar. When the state is offering to amended charges it often, in fact usually, will dismiss some misdemeanor charges. Attorneys are often unsure which charges, in this case counts 1 or 2, will be dismissed. What the transcript is actually showing is that this prosecutor was dismissing count 2, a felony, rather than count 3, a misdemeanor. Counsel clearly stated that he had already explained the plea form and was ready to proceed. What he added to the form was the fact that count 2 rather than count 3 would be dismissed. Of course, the rights being waived were identical for both counts and this Court found on that day that Petitioner was aware of the rights he was giving up that day on all of the charges. Nothing presented as a result of this petition has convinced the Court otherwise.
C. Defendant's attorney ineffective in not seeking a more favorabledisposition.
Next Petitioner claims ineffective assistance of counsel because Mr. Coughlin didn't obtain a more favorable disposition. Petitioner points to Coughlin's testimony that others arrested with DePina received more favorable dispositions perhaps filings. But Petitioner ignores the fact that in Superior Court there were no co-defendants and DePina was charged with felonies while on probation, not disorderly conduct. Petitioner points to Coughlin's testimony at the hearing that he thought that the case was very defendable. This should come as no surprise. Mr. Coughlin, a fine defense attorney, like all attorneys always claims that his case is winnable. The same can be said for his opposite number on the prosecution side. Petitioner seems to suggest that if Coughlin had merely to demand a disposition that he wanted the prosecution would have had no choice but to concur. This seems to imply that the defense had to merely stamp its feet and hold its breath long enough and the State would given defendant the disposition he demanded. There is no evidence to suggest that any such thing would have happened. The State had in fact made significant concessions. DePina was offered a chance to plead to misdemeanors rather than felonies. Charges were being dismissed. Finally, a simple reading of the plea form introduced by Petitioner reveals the most important concession of all.
As has been noted, DePina was on a suspended sentence at the time of the plea. On that day, the prosecution was prepared to present DePina to the court as a violator of that suspended sentence. At that point, the State could have, and usually does, request that DePina be held without bail pending a violation hearing in ten days. Coughlin convinced the State not to proceed with the violation in consideration of defendant's plea.
Petitioner claims that since defendants are usually presented as violators at time of initial arraignment on a new charge that it is clear that the State had no intention of violating DePina. This is a complete misstatement of fact. The State routinely presents defendants as violators at the time of arraignment if the potential of violation was not discovered at the time of initial appearance. In fact, as this being written the State is preparing to present a defendant as a violator as part of the arraignment. Such an occurrence is not unusual in the least.
And so, we find Attorney Coughlin in court with a client who is a potential violator of a suspended sentence. That client could be held without bail for at least ten days awaiting a hearing. Further, his client is facing two new felony charges as well as one new misdemeanor charge. It is hard to see the overwhelming strength of Coughlin's position that is suggested by Petitioner.
What is the outcome? Coughlin convinces the State to amend one felony charge, dismiss another and allow a plea to two misdemeanors and promise not to violate his client as a result of this plea. The outcome of the plea negotiations can not be viewed in pieces but only in the totality of the defendant's situation at the time of the plea. Ineffective assistance of counsel? This Court rejects that position.
Coughlin testified at length at the hearing. He had represented DePina and other members of his family for years. Petitioner claims that by testifying on behalf of DePina at the hearing, he was acknowledging giving improper advice. On the contrary, Attorney Coughlin testified openly and honestly about what happened seven years ago. His testimony shows his concern for his client and the professionalism he brings to the practice of law. While he sincerely wishes that his client was not in his current position, there is no suggestion that the advice given his client was in any way improper. Attorney Coughlin wishes the outcome was different, with hindsight he has second guessed his decisions on that day, but the fact remains that no one has the luxury of revising decisions made seven years ago. Of special note, however, is the fact that Attorney Coughlin maintained throughout his testimony that he would not have signed the plea form under any circumstances unless he was completely confident that Petitioner understood the disposition as well as the rights he was giving up. The errors of judgment were DePina's in violating the law and the terms of his suspended sentence, not Coughlin's in extracting him from those errors.
Finally, the Court must address the elephant in the room that no one wishes to mention. What Petitioner is implying without actually saying is what Coughlin should have somehow been able to demand Petitioner is really saying that Coughlin should have demanded a sentence of less that one year on the misdemeanor charges. There has developed, with certain members of the defense bar in recent years, the idea that non-citizens are entitled to a disposition more favorable than that usually offered citizens. Today we often see a non-citizen receive a sentence of 364 days or eleven months rather than one year. In fact, that is what Petitioner received in Superior Court on his first arrest and later a six month sentence in District Court for domestic assault. If that is the case, why didn't Coughlin insist on such a disposition in 1997? Perhaps he did although there is no evidence of this and memories certainly fade over seven years. It would not have made a difference. This Court rejects the motion that non-citizens should be offered more favorable dispositions. This Court knows of no country anywhere in the world that routinely treats non-citizens better than its own citizens. The very concept of equal justice under law requires that all accused be treated equally. Defense counsel, feeling that Federal law in this area is unfair, often seek to nullify immigration consequences in the state courts rather than in the political arena of the United States Congress where the issue belongs.
Mr. Coughlin, an experienced defense attorney, knew the position of this Court. What was he to do? One solution, which no one will admit to, is judge shopping. Coughlin could have arraigned his client and hoped that he could find a more favorable forum for his position. However, DePina's actions presented a very real problem for his attorney. Hanging over the plea negotiations was the very real, not illusionary, possibility of a violation hearing. Coughlin had to deal with the realities of 1997, not the wishful thinking of 2004. And so, on May 29, 1997, Amancio DePina entered a plea of nolo contendere to the amended charges.
What happened next? Was DePina met on the courthouse steps by immigration officials and deported? No, it took fully six years, and two further arrests, before he was held on immigration offenses based on the 1997 plea. Perhaps the decision to enter the plea agreement wasn't so bad after all. Subsequent events, unforeseeable to defense counsel in 1997, have greatly changed the way immigration consequences are viewed regarding plea agreements.
The Court rejects any claim that a plea agreement more favorable to Petitioner was a realistic possibility on that day and that the failure to secure the same was ineffective assistance of counsel.
D. Ineffective assistance of counsel lead to DePina's divorce and otherconsequences.
Petitioner claims that as a result of Attorney Coughlin's alleged deficient performance as counsel in 1997, Mr. DePina's wife has filed for divorce. While even if true, it appears that such a result would have been a collateral consequence of the plea and, therefore, not entitle Petitioner to relief.
However, as to whether this is even true is highly questionable. It would appear that the person in the best position to state the reasons for the divorce petition is the person filing. DePina's wife was never called to testify. It should also be noted that Petitioner's last arrest was for a charge of domestic assault against his wife, to which he entered a plea in District Court. The assault charge stemmed from a disagreement over a parking space. This may in fact have played a role in her decision.
Finally, in his petition DePina makes reference to mental health issues as a potential ground for relief. However, no evidence of any sort was presented that any mental health issues even existed much less that such issues would justify relief.
 CONCLUSION
This Court can only conclude that Petitioner, like Marley's ghost, finds himself bound only by the chain he forged in life. In arriving in this country, he had the opportunity to take advantage of the all this society offers. Instead, on several occasions, he violated laws and, therefore, squandered the chance he had for a new life. Even now he seeks to place the blame on everyone but himself. It was not language difficulties, ineffective assistance of counsel or anything else save his inability to follow the law that has placed him in his current position.
After a review of all the information provided by the Petitioner in his filings, exhibits and the testimony presented at the hearing, this Court finds that DePina made a knowing, willing and intelligent waiver of all his rights, while represented by competent counsel, and entered a voluntary plea to the charges contained in the above captioned case. Accordingly, the Petitioner's claim for post-conviction relief is denied.
Counsel for Respondent shall submit an order consistent with this decision.